## STANDARD OIL CO. OF LOUISIANA v. BATON ROUGE COAL & TOWING CO. *

### THE McDOUGALL.

Circuit Court of Appeals, Fifth Circuit.
May 23, 1929.

No. 5514.

Arthur A. Moreno, of New Orleans, La. (Lemle, Moreno & Lemle, of New Orleans, La., on the brief), for appellant.

Geo. H. Terriberry, Jos. M. Rault, and H. F. Stiles, Jr., all of New Orleans, La. (Terriberry, Young, Rault & Carroll, of New Orleans, La., on the brief), for appellee.

Before WALKER, BRYAN, and FOSTER, Circuit Judges.

WALKER, Circuit Judge. By the decree appealed from the steam tug McDougall was held solely responsible for a collision which occurred on December 19, 1924, between 11 and 12 o'clock p. m. in the Mississippi river,

*Rehearing denied August 10, 1929.

just above the city of Baton Rouge, between the gasoline towboat Lady Jane and a barge towed by the McDougall, and the McDougall was adjudged to be liable for the amount of damages found to have been sustained by the Lady Jane and the unnamed log barge she was towing.

The opinion rendered by the District Judge contains the following:

"The evidence shows that the 'Lady Jane' had a log barge in tow, which was lashed to her starboard side as she came downstream, destined for a wharf just above that city. Her port and starboard running lights were showing bright, but there was no starboard light on the barge, nor any other light, save a kerosene lantern carried by the deck hand who was aboard the barge. This was in violation of Pilot Rules for Western Rivers (March 1, 1924, p. 10), which require a starboard light on the forward starboard corner of the barge in tow. Her crew consisted of three men, acting, respectively, as captain, engineer, and deck hand. The one acting as captain had a license, restricted to the piloting of motor boats. All three were experienced river boatmen.

"The tug 'McDougall' had eight oil barges in tow, in duck-pond formation, with three barges ahead and the remainder lashed on both sides. She showed her running lights, with two range lights overhead, and the required running lights on the port and starboard corners of the two front barges. The barges had a free board of less than one foot, so that the running lights, which were boxed flush with or just above the deck, showed not more than one or two feet above the surface of the water. This was in violation of the Pilot Rules for Western Rivers (March 1, 1924, p. 10), which require that such lights be displayed not less than ten feet above the surface of the water.

"The 'McDougall' was manned with a licensed captain and full crew. She had left the east bank of the River at Baton Rouge, bound for New Orleans. She headed out upstream at an angle of about forty-five degrees toward the west bank, to turn downstream. When at or about midstream, she received and answered a two-blast signal from the 'Lady Jane,' which was then slightly west of midstream, somewhat less than a half mile away.

"At this juncture the 'McDougall' was on a course at an oblique angle to that of the 'Lady Jane,' which was then showing her starboard light. Each vessel had the other on her own starboard side. If these courses had continued, the 'Lady Jane' would have passed under the stern of the 'McDougall' in safety. The 'McDougall,' however, was moving under a slow bell, and the captain of the 'Lady Jane,' probably because he sighted other vessels downstream anchored off the east shore, toward which he was then headed, suddenly decided to change his course.

"The captain of the 'Lady Jane' had given the two-blast signal under the erroneous impression that the crossing vessel was a railroad transfer ferry, which he knew to be operated at or near that point. It was only when he approached nearer that he realized his mistake as to the identity of the vessel, which moved much more slowly than the ferry. He first rang a stop signal to his engine; then, giving a one-blast signal, which was answered by the approaching vessel, he rang up his engine full ahead, putting the wheel, hard-a-port, intending to pass between the 'McDougall' and the west bank.

"This one-blast signal was given when the vessels were within considerably less than a half mile of each other. In his original testimony before the Local Inspectors, the captain of the 'Lady Jane' fixed the distance at five hundred feet. Later, when testifying for libelant, he fixed it at seventeen hundred (1,700') feet, claiming to have revisited the scene and to have established it from fixed objects ashore. From other testimony in the record, I am satisfied that the distance was considerably more than five hundred feet, though less than seventeen hundred feet (1,-700').

"At this juncture, after the one bell signal had been exchanged, the 'Lady Jane' had the 'McDougall' on her own port side, and, under Rule IX of the Pilot Rules for Western Rivers (March 1, 1924), had the right to hold her course and speed. The 'McDougall,' having the 'Lady Jane' on her own starboard side, was bound to keep out of the way by directing her course to starboard, after having agreed to the change of course by her answer with a one-blast signal.

"Each side contends that the barges in tow by the other were not visible. The captain of the 'McDougall' says that he knew the 'Lady Jane' was a gasoline boat, because the two-blast signal that he first heard was from an air whistle. By the play of his searchlight he later knew his shore bearings and also saw the 'Lady Jane,' which he knew was moving faster than his vessel; that, however, he did not know she had a barge in tow until the collision occurred, because there was no light on it; that, if he had known that she had a barge in tow, he would not have assumed that she could pass between his flotilla

and the west bank, then distant two hundred fifty feet or less. He claims that he stopped the engine, or at least had it under a slow bell. He admits he was under headway, though moving slowly. Considering the running time of the 'McDougall' from the east bank to the point of collision, and other evidence of record, I am constrained to resolve the conflict of evidence on this point against him. Even though it was certain that the engine was stopped, this would not be a full compliance with his duty under the rules.

"Having the 'Lady Jane' on his own starboard hand, it was the duty of the captain of the 'McDougall' to keep out of its way. Knowing his bearings and distance from the shore, he should have stopped and reversed, or at least have given the danger signal to warn the vessel he was approaching."

We concur in the conclusion that faults chargeable against the McDougall proximately caused or contributed to the collision. By consenting to a port to port passage the McDougall incurred the duty of keeping out of the way of the Lady Jane. The relative locations of the vessels at the time of the exchange of the one-blast signals was such as to make it inconsistent with the McDougall's performance of that duty for her to continue moving, though slowly, toward the west bank of the river, without giving a danger signal, instead of stopping and reversing. It is to be inferred from the evidence that the collision would not have occurred if the McDougall had not continued to move toward the west bank after she agreed to the port to port passage. The Lady Jane was struck on her port side at or near amidships by the port corner of the middle of the three barges which were towed ahead of the McDougall. There was evidence, including testimony of a witness for appellant who was on that barge at the time of the collision, that it protruded forward beyond the barges on each side of it. Evidently but for the continued movement toward the west bank of the river of the McDougall and her tows, that protruding barge would not have been in the pathway of the Lady Jane when she crossed the course of the McDougall. The evidence was without conflict as to that barge having no light on it. It well may be inferred that the handling of the Lady Jane would have been different, and that the collision would not have occurred, if her captain had sooner been apprized of the location of the unlighted barge with which she collided.

We think the evidence requires the conclusion that faults chargeable against the Lady Jane also proximately contributed to the collision. The person in charge of her at the time of the collision was not her regular captain. He did not act in that capacity prior to the trip which ended with the collision. He was unfamiliar with rules governing the navigation of vessels in the Mississippi river, and could not read one of those rules called to his attention during his examination as a witness. It is admitted that the rule under which a green light should have been on the starboard bow of the barge towed on the starboard side of the Lady Jane was not complied with. A result of that noncompliance was that those aboard the McDougall were deprived of the benefit of evidence of the fact that the Lady Jane had a barge in tow. During the interval between the exchange of the two-blast signals and the exchange of the one-blast signals the green light on the starboard side of the Lady Jane was within the view of those aboard the McDougall. It is to be inferred that the presence of the barge on the starboard side of the Lady Jane would have been discovered by the captain of the McDougall if that barge had been lighted as required by the rule. A result of the failure to disclose the presence of that barge was that the captain of the McDougall, in consenting to the port to port passage and in permitting the continued movement of the McDougall toward the west bank, acted without adequate information as to the space required by the privileged vessel for a safe passage between the McDougall and the west bank. It is not to be presumed that if the captain of the McDougall had been apprized of the fact that the vessel giving the one-blast signal had a barge in tow he would have consented to the passage suggested by that signal or would have permitted the continued movement toward the west bank of the McDougall and her cumbersome tow. We think it is to be inferred that the lack of the required light on the barge towed by the Lady Jane contributed to bringing about the consent of the McDougall's captain to the port to port passage and to his failure to take action to make sure that the privileged vessel would have ample space to pass between the west bank and the barges towed ahead of the McDougall. Furthermore, the circumstances of the collision were such that it cannot reasonably be affirmed that the fault of the owner of the Lady Jane in permitting her to be in the charge of an illiterate person who was unfamiliar with the rule as to light on a barge towed alongside was without effect or influence in bringing about the collision. We conclude that faults of each of the vessels were proximate

contributing causes of the collision, and that the damages resulting from the collision should be divided.

For the appellant it was contended that the amount awarded as damages was excessive. We do not think that under the evidence we would be warranted in setting aside the action of the trial court in fixing the amount of damages to be awarded.

The decree is reversed, and the cause is remanded, with direction that the damages be divided.

Reversed.